GALVESTON, H. & S. A. RY. CO. v. BROWN.   (No. 5538.) *

(Court of Civil Appeals of Texas. San Antonio. Nov. 24, 1915. Rehearing Denied Jan. 5, 1916.)

1. MASTER AND SERVANT ⬚163—INJURIES TO SERVANT—DUTY OF MASTER.

It is the duty of the master to use ordinary care to see that there are sufficient servants present at a particular piece of work to insure the safety of all engaged therein.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 328–330; Dec. Dig. ⬚ 163.]

2. MASTER AND SERVANT ⬚278—INJURIES TO SERVANT—EVIDENCE—SUFFICIENCY.

Evidence in a servant's action for injuries that he was ordered by his foreman to lift a crank pin, that he had never lifted such a pin, and did not know its weight, that it was the master's custom to have such pins lifted, and that he, therefore, must have known that the pin was too heavy for two men to lift, and that after the servant had lifted the pin the car on which it was resting was withdrawn, so that he could not let it down, was sufficient to sustain a verdict for the plaintiff servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. ⬚278.]

3. MASTER AND SERVANT ⬚293—INJURIES TO SERVANT—LIABILITY OF MASTER—ACTIONS—INSTRUCTIONS.

Refusal of an instruction in a servant's action for personal injuries caused by being ordered to lift a crank pin too heavy to be lifted that, if the foreman thought the pin was too heavy for the men to lift, the employer would not be liable for his placing an inadequate force to lift it, if a man of ordinary prudence would so have acted, was not error, since it was the duty of the master to know whether the pin could be lifted as ordered, and the servant cannot be held liable for the master's ignorance of a matter which it was his duty to know, or to

have assumed the risk in acting under the foreman's orders as he did.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1156, 1158–1160; Dec. Dig. ☜293.]

4. MASTER AND SERVANT ☜278—INJURIES TO SERVANT—LIABILITY OF MASTER—EVIDENCE.

Evidence in a servant's action for injuries caused by being ordered to lift a crank pin too heavy to be lifted that the pin belonged to the master, that the foreman knew that it weighed from 260 to 280 pounds, that the employer was in the habit of having them handled, and must have known the weight of the pins and what number of men could safely handle one of them, was sufficient to show knowledge of the employer that two men could not lift the pin and consequent lack of ordinary care in ordering two men to lift it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. ☜278.]

5 MASTER AND SERVANT ☜149—INJURIES TO SERVANT—NEGLIGENCE.

Where two servants were ordered to lift a crank pin from a truck, and the pin was so heavy that after lifting it one of the servants was injured, the question whether removing the car so that the pin could not be lowered to it was negligence was immaterial, since the negligence of the master was shown by ordering the lifting of the pin.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 291–295; Dec. Dig. ☜149.]

6. MASTER AND SERVANT ☜190—INJURIES TO SERVANT — LIABILITY OF MASTER — NEGLIGENCE—DEFENSES.

That a foreman ordered five men to lift a crank pin was no defense to the action of one of two men whom he allowed to lift it for injuries caused by the weight of the pin; for it was negligence of the foreman to permit less than the number ordered, to lift the pin.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 449–474; Dec. Dig. ☜190.]

7. DAMAGES ☜130—INJURIES TO SERVANT—EXCESSIVE DAMAGES.

A verdict for $11,500 in an action by the injured servant, rendered on evidence inconclusive as to the permanency and gravity of his injuries, the evidence as to the permanency of the injury being by one witness on subjective symptoms only, was excessive, and reduced to $7,500.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 357–367, 370; Dec. Dig. ☜130.]

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by Sidney E. Brown against the Galveston, Harrisburg & San Antonio Railway Company. From a judgment for the plaintiff, the defendant appeals. Modified and affirmed on condition.

Baker, Botts, Parker & Garwood, of Houston, and Templeton, Brooks, Napier & Ogden, and Ed. W. Smith, all of San Antonio, for appellant. John Sehorn and Arnold Cozby & Peyton, all of San Antonio, for appellee.

FLY, C. J. This is a suit for damages instituted by appellee against appellant, alleged to have accrued by reason of the negligence of appellant in failing to furnish a sufficient number of men to lift a main crank pin off a truck to a drill press, and which appellee had been ordered by his foreman to lift. Appellant alleged that appellee assumed the risk of lifting the pin, the size and weight of which was apparent to him. The cause was tried by jury and resulted in a verdict and judgment in favor of appellee in the sum of $11,500.

The evidence shows that appellee, a man 33 years of age, was what is termed a machinist helper in the roundhouse of appellant in the city of San Antonio, and had worked in that capacity about two months. Carnegie was roundhouse foreman, and Blaine was machine shop foreman. Appellee, Pope, and Vargas were members of the same crew, and were under the control and supervision of Carnegie. In the forenoon of April 4, 1913, Carnegie sent appellee over to the machine shops to help move a press, and while waiting there Vargas came with a two-wheel truck on which was lying a steel crank pin. Carnegie ordered appellee to help Vargas to lift the crank pin off the truck and put it on the drill press, which was close by. Appellee complied and endeavored to do as ordered. On his first effort he lifted his end about 18 or 20 inches from the truck, which was pulled away by Blaine, and then he could lift it no further, and he called for help, and the foreman ordered him not to turn the pin loose. Appellee was afraid to turn it loose for fear it would mash his feet or those of Vargas. The pin was a smooth piece of steel weighing 280 pounds, and it was about 1 foot in diameter at one end and 5 or 6 inches at the other, and was about 4 feet long. Appellee took hold of the large end. Three men beside Vargas and appellee were standing close by when appellee was ordered to take hold of the pin and complied with the order. When he called for help, Pope, another employé, made one step, and laid hold of the pin and assisted appellee. Appellee was greating damaged by the strain of lifting the pin. The pin was too heavy for two men to lift, and appellee did not know this fact until he had lifted it into a position from which he could not safely drop it, and from which he was commanded by a vice principal of appellant not to drop it. Carnegie evidently thought the pin too heavy for two men to handle because he at first ordered three men to the place to lift the pin.

[1] It is the duty of the master to use ordinary care in seeing that there are sufficient servants present at a particular piece of work to insure the safety of all engaged in the labor. As said by Justice Neill for this court in Bonn v. Railway, 82 S. W. 808:

"He is bound to see that the number of servants engaged upon the work in hand remains sufficient to insure the reasonable safety of each of them. This principle affects him with liability not only where he allows the force of employés, considered as a whole, to fall below the proper aggregate, but also where he fails to assign an adequate number of men to each par-

ticular piece of work which may be undertaken from time to time."

The opinion is sustained by a long line of authorities cited therein. As said again in that case:

"The principle of law which imposes this duty upon the master has been asserted and applied in cases ranging from the navigation of an ocean steamer and the operation of a railway train to the lifting of a log or the turning of a stone."

As stated by Labatt (Master & Servant, § 1107), it is the duty of the master to employ "a staff of servants sufficiently large to perform the work with reasonable safety to themselves." The rule is too well settled for further discussion, and it becomes merely a question of fact as to whether, under the circumstances arising in this case, appellant was liable under the application of the rule.

[2] The facts showed that appellee had never before attempted to lift a pin of the kind involved herein, and that as to the weight of such pins he was, consequently, inexperienced, as well as in the lifting of such pins, and the master knew or should have known that the pin was too heavy for two men to lift, and especially that the large end of the pin was too heavy for one man to lift. After appellee had lifted the pin and tested its weight, he could not drop it with safety to himself or assistant, as the truck had been withdrawn, and the pin would have fallen to the ground. These views of the court dispose of the first, second, and third assignments of error, which question the sufficiency of the evidence to sustain the verdict.

[3] The fourth assignment of error assails the action of the court in refusing to instruct the jury that, if the foreman thought that the pin was too heavy for two men to lift, his employer would not be liable for his act in placing an inadequate force to lift it, if a man of ordinary prudence would have so acted. It was the duty of the employer to ascertain and know whether it was safe for the employé to do things that he was ordered to do by his master, and he should not be responsible for the ignorance of the master. He had the right to presume that his vice principal knew that he could lift an appliance belonging to the master, of whose weight the employé was in complete ignorance, and he was justified in acting upon that presumption. If appellant was ignorant of the weight of the pin and of the fact that two men could not carry it, it, and not appellee, should be made to suffer for that ignorance. If it did not know matters so intimately connected with its appliances, that was its fault, and the servant should not be responsible for or suffer the consequences of such ignorance. It was not necessary for appellee to prove that appellant had actual knowledge of the weight of the pin, but merely to introduce facts that made it the duty of appellant to know such weight. Elliott on Railroads, § 1307, and cases cited.

[4] The evidence in this case showed that the pin belonged to appellant; that the foreman knew that the pins weighed from 260 to 280 pounds; that appellant was in the habit of having them handled; in fact, one witness stated they handled them all the time, and it must have known the weight of the pins and what number of men could safely handle one of them. The test was not as to the foreman acting as an ordinarily prudent man would have done, but did appellant have knowledge of the danger of having two men to lift the pin, or would the exercise of ordinary care have given it such knowledge? The evidence answers one or both of such questions in the affirmative. It was a question of knowledge upon the part of appellant, and not one of the exercise of ordinary care upon the part of one of its employés. It was not pleaded that appellant did not know the weight of the pin or that two could not lift it, nor that the foreman was acting with ordinary care and prudence in ordering appellee to lift the pin. The whole burden of the answer was that appellee knew the weight of the pin as well as appellant, and therefore assumed the risk of lifting it.

[5] The fifth, sixth, seventh, and ninth assignments of error are without merit and are overruled. Even if there was no negligence in removing the truck when the pin was lifted from it, the other facts make out a case of negligence.

[6] If, as claimed by appellant, the order was not a special one to appellee and Vargas to lift the pin from the truck, but was an order to all the men, that would not be a defense; for, when the forman saw that an inadequate number of men had responded to his order, he should have supplied other men. The eighth assignment of error is overruled.

The tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth assignments of error are overruled. The issue sought to be interpolated by the special charge was not raised by the facts. It is a peculiar state of case when appellant claims that a man who had never handled such appliances before was charged with knowledge of its weight, and yet an old experienced foreman who had been handling many such appliances knew nothing about it. The charge complained of in the eighteenth assignment of error was the law of the case, as hereinbefore indicated, and the assignment is overruled.

[7] The nineteenth assignment of error complains that the verdict is excessive, and we think it should be sustained. The evidence is very inconclusive as to the gravity and permanency of the injuries. Only one witness testified to a belief that the injuries are permanent, and he formed his opinion on the injuries from subjective, and not objective, symptoms. It is well recognized that subjective symptoms can be feigned. The size of the verdict, under the facts, evidences prejudice upon the part of the jury.

If the appellee enters a remittitur of $4,-

000 within 14 days, the judgment will be affirmed for the reduced amount of $7,500, otherwise it will be reversed, and the cause remanded.