### EL PASO CITY LINES, Inc. v. HARRIS.

### No. 4712.

Court of Civil Appeals of Texas. El Paso.

June 14, 1950.

Rehearing Denied July 5, 1950.

Kemp, Smith, Brown, Goggin & White, El Paso, for appellant.

Cunningham & Ward, El Paso, for appellee.

PRICE, Chief Justice.

This is an appeal from the District Court of El Paso County, 65th Judicial District.

Sally Harris, a widow, hereinafter called plaintiff, sued the El Paso City Lines, Inc., hereinafter called defendant, to recover damages for personal injuries alleged to have been negligently inflicted on her while

she was attempting to board a bus of defendant operated by it as a common carrier. Trial was before the court with a jury, submission on special issues. On the verdict returned the court entered judgment in favor of plaintiff in the sum of $9,000.00. Defendant has perfected this appeal therefrom.

There is only one point urged by the defendant, that is that the judgment as to damages is excessive. It is urged that the judgment is so excessive as to indicate passion and prejudice on the part of the jury against the defendant. Defendant contends that this court should reverse the judgment or require a remittitur from plaintiff as a condition of affirmance.

Plaintiff was about 79 years of age when her injury occurred. As she was seeking to board said bus of defendant, her left foot was caught in the door and she fell to the ground and thus sustained her injuries. After this occurrence she got on the bus and rode to her home. Her knee and leg down to her ankle were bruised, and her left foot was bruised across the top. She called in Dr. Murray to treat her and Dr. Floyd painted her knee with iodine. Dr. Breck was called to treat her. In the course of the treatment X-rays of her person were taken at his office. She made some 35 trips to Dr. Breck's office, hiring a taxi each time, she paying in taxi fare $37.50. She spent $11.65 for drugs prescribed by Dr. Cameron; she paid $20.00 for a brace to support her back as ordered by Dr. Breck. Dr. Breck's bill was $198.00; Dr. Mildred Murray's bill was $50.00.

Before she had the accident she did all of her housework and cooking; since she has not been able to do such work and has paid a maid $156.00. She testified before the accident her health had been pretty good and she had been able to travel extensively. She further testified that after she was hurt in the accident her back, neck, shoulders and head hurt, her knee was lacerated but did not give her the pain like her neck, back and head did, that her knee swells up from time to time; further since the accident she could not walk nearly as well as before; she felt pain nearly all the time except when sleeping. She had to take about twenty grains of aspirin per day and she was more nervous since the accident than she was ever before in her life. Dr. Breck testified the plaintiff in the course of her treatment made about 35 trips to his office; that she first came there December 4, 1948, that when he saw her on that day she had considerable injuries. Her body was skinned up and had abrasions, contusions, blue marks and a great deal of stiffness and pain in her neck and she had a severe contusion or bruise to her right knee, bruises on her right hip, right knee and left foot. She came to his office on December 6th and detailed X-ray studies were made. The X-ray showed a great deal of hypertrophic arthritis, other changes had come with old age in the bones and joints of the spine. In his opinion this arthritic condition was caused by the onset of old age rather than by the accident she had suffered, but that the accident probably aggravated the arthritic condition; she would probably suffer pain for the rest of her life.

From his examination he formed the opinion that she was pretty much disabled or stove up. She always complains of pain and tenderness about the shoulders and body and lower portion of her limbs, the small of her back and right knee. There was tenderness in those portions of the body when he examined her the last time on September 23rd. He gave her general sedatives and pain killing medicine. There were no operations. A fall such as she had would aggravate the arthritic condition of the back, hip, knee and neck, and in his opinion the fall did aggravate her condition, causing pain.

██ ██ If the verdict was in any way influenced by passion or prejudice on the part of the jury, same must be arrived at as an inference from the amount of damages awarded. The defendant cites one case in support of his point of error, Galveston H. & S. A. R. Co. v. Brown, Tex.Civ.App., 181 S.W. 238, 240, Wr. Den. In that case

there was a judgment for the sum of $11,500.00. As a condition of affirmance the court of appeals required a remittitur of the sum of $4,000.00. The report of the case fails to show what the evidence was as to the nature and extent of plaintiff's injuries. We quote from the case: "The nineteenth assignment of error complains that the verdict is excessive, and we think it should be sustained. The evidence is very inconclusive as to the gravity and permanency of the injuries. Only one witness testified to a belief that the injuries are permanent, and he formed his opinion on the injuries from subjective, and not objective, symptoms. It is well recognized that subjective symptoms can be feigned. The size of the verdict, under the facts, evidences prejudice upon the part of the jury."

Here an elderly woman afflicted with an arthritic condition was thrown to the ground with some violence. This caused an aggravation of her diseased condition. According to her testimony she had been free from pain before the accident; she constantly suffered pain after the accident. Dr. Breck testified she would probably suffer pain after the accident. She had been able to perform her household duties before the accident; she was unable to do so after the accident. True, these are subjective symptoms, but to determine whether her testimony was true or false was for the jury, and it is beyond the function of this court to pass upon her credibility.

 The Brown case was decided November 24, 1915. A long line of cases hold that in the determination of whether a judgment is excessive, consideration may be taken of the purchasing power of money at the time of its rendition. 13 Tex.Jur. p. 270, par. 154; Kimbriel Produce Co. v. Webster, Tex.Civ.App., 185 S.W.2d 198, (Wr. ref.) The amount of damages to be assessed in a personal injury action is ordinarily for the jury. Before an appellate court is warranted in interfering it should be manifest that the jury were inflamed by passion, prejudice, sympathy or some other improper motive. 13 Tex.Jur. p. 270–271, Sec. 155. The amount of the verdict with-

out other proof does not establish bias or prejudice on the part of the jury. World Oil Co. v. Hicks, 129 Tex. 297, 103 S.W.2d 962; Scott v. Gardner, Tex.Civ.App., 159 S.W.2d 121 (Wr. Ref. W.M.).

No error appearing from the record, it is ordered that the judgment of the trial court be in all things affirmed