Chon TRI a/k/a Hien Dinh Nguyen and Theravada Buddhist Corporation, Petitioners,

v.

J.T.T. and M.T., Respondents.

No. 03–0794.

Supreme Court of Texas.

Argued Sept. 28, 2004.

Decided May 13, 2005.

Rehearing Denied June 10, 2005.

Grant Parker Harpold, Hargis & Harpold, L.L.P., Houston, for Petitioners.

Richard L. Flowers Jr., Kevin McEvily, McEvily & Flowers, Michael O. Whitmire, Christopher Lynn Ashby, Ashby & Whitmire, Houston, for Respondents.

Justice OWEN delivered the opinion of the Court.

The ultimate question in this case is whether the trial court was required to render a judgment other than the one it did based on the jury's findings. There were two theories of liability—conspiracy and negligence. Conspiracy is a ground of recovery that has more than one element. Some but not all the elements of conspiracy were submitted to and found by the jury, and the trial court was not asked to and did not find the omitted elements. The trial court's judgment did not include any recovery on the basis of conspiracy. In these circumstances, the omitted elements of conspiracy are "deemed found by the court in such manner as to support the judgment." [1] With regard to negligence, the trial court refused to impose individual liability on a corporation's agent and instead held the corporation liable for its agent's negligence. The record does not reflect that the trial court erred in doing so. We accordingly reverse the court of appeals' judgment and affirm the trial court's judgment, which awards damages for negligence but not conspiracy.

# I

The plaintiffs in this case are sisters, J.T.T. and M.T. We have few facts before us because the sisters, who were the appellants in the court of appeals, did not designate any of the evidence adduced at trial for inclusion in the appellate record,[2] nor did the defendants counter-designate any part of the record.[3] The sisters designated only their live pleadings at the time of trial, a handwritten request for a jury question that is not relevant to the issues on appeal, and the clerk's and reporter's records regarding a number of post-verdict proceedings.

Based on the parties' recitation of facts in briefing before the court of appeals and this Court to which no challenge has been made,[4] we know that J.T.T. and M.T. were raped and otherwise sexually assaulted by Dung Huu Khuat, a Buddhist monk, while they were guests at a Buddhist temple in Pomona, California. Khuat was convicted in California of rape and other sexual assaults of the sisters. They brought suit in Texas against Khuat, who did not appear at trial, and four other defendants: Theravada Buddhist Corp., which owned or operated the California temple at which the assaults occurred; Phap Luan Buddhist Culture Center, located in Houston; Ho Giac, a monk at the Houston-based Phap Luan Buddhist Culture Center; and Chon Tri, a monk at the California temple and an officer of the Theravada Buddhist Corp.

1. Tex.R. Civ. P. 279.

2. *See* Tex.R.App. P. 34.6(b)(1) ("At or before the time for perfecting the appeal, the appellant must request in writing that the official reporter prepare the reporter's record."); *id.* 34.6(c)(1) ("If the appellant requests a partial reporter's record, the appellant must include in the request a statement of the points or issues to be presented on appeal and will then be limited to those points or issues.").

3. *See id.* 34.6(c)(2) ("Any other party may designate additional exhibits and portions of the testimony to be included in the reporter's record.").

4. *See id.* 38.1(f) ("In a civil case, the court will accept as true the facts stated unless another party contradicts them.").

At the conclusion of a jury trial, the trial court rendered judgment in favor of J.T.T. and M.T. against some but not all defendants on some but not all legal theories the sisters had asserted. J.T.T. and M.T. appealed. The Houston-based Phap Luan Buddhist Culture Center and its clergyman Ho Giac also filed a notice of appeal, but they settled with the sisters prior to the court of appeals' disposition of the case. The only remaining parties to the appeal in this Court are J.T.T. and M.T., the Theravada Buddhist Corp., which operated the California temple, and one of the clergymen, Chon Tri.

We will analyze the jury's verdict and the trial court's pre-and post-trial determinations in greater detail later in this opinion, but to summarize, the jury was instructed that the "negligence" of Khuat, the rapist, caused "the occurrence in question," and the jury was asked to find whether the negligence of any of the other four defendants proximately caused "the occurrence in question." The charge permitted the jury to find negligence on the part of the operator of the California temple based on simple negligence, premises liability, or both. The jury found the two clergymen as well as the operator of the California temple negligent, but it failed to find the Houston-based Buddhist Culture Center negligent. The jury was not instructed that the rapist Khuat committed negligence per se, as the court of appeals' opinion states.[5]

The jury was then asked to apportion negligence among the defendants, including the rapist Khuat. It attributed 85% to Khuat, 5% to Chon Tri (the California-based clergy), 5% to Ho Giac (the Houston-based clergy), 5% to Theravada Buddhist Corp. (the operator of the California temple), and 0% to the Houston-based Buddhist Culture Center. The jury was then asked to decide the amounts that would compensate the sisters, and it awarded $488,000 to J.T.T. and $727,000 to M.T.

The jury was also asked to find whether any of the defendants were "part of a conspiracy that damaged" J.T.T. and M.T. The jury answered "yes" as to all defendants except the Houston-based Buddhist Culture Center. In response to other questions, the jury found that Khuat, the rapist, acted with malice and assessed $4,500,000 in punitive damages against him. The jury failed to find that any of the other defendants acted with malice.

The trial court's judgment reflects that the trial court found as a matter of law that two of the clergymen, Chon Tri and Ho Giac, "were acting within the course and scope of their employment with [the operator of the California temple] and [the Houston-based Buddhist Culture Center], respectively." The trial court then rendered judgment against the rapist Khuat for 85% of the damages found by the jury, against the Theravada Buddhist Corp. (the operator of the California temple) for 10% of the damages found by the jury, and against Ho Giac (the Houston-based clergy) for 5% of the damages. Pre-and post-judgment interest was awarded on each of the amounts assessed against these defendants. A take-nothing judgment was rendered in favor of the Houston-based Buddhist Culture Center although there were negligence findings against its employee Ho Giac, and a take-nothing judgment was also rendered in favor of Chon Tri (the California clergyman), although there were jury findings against him individually, and the corporation in which he was an officer, Theravada Buddhist Corp., was held vicariously liable for his negligence. The trial court's judgment imposed joint and several

5. 111 S.W.3d 680, 684.

liability only for court costs. The judgment thus gave no effect to the conspiracy-related findings and did not impose liability on Chon Tri individually.

In the court of appeals, J.T.T. and M.T. challenged the trial court's failure to give effect to the conspiracy-related findings and the failure to render judgment against Chon Tri in his individual capacity. The court of appeals sustained these points and remanded the case to the trial court with instructions to reform the judgment by imposing joint and several liability against the three remaining defendants (the rapist Khuat, the operator of the California temple Theravada Buddhist Corp., and California clergyman Chon Tri) and to render judgment against Chon Tri individually for 5% of the sisters' damages.[6] The court of appeals also directed the trial court to reduce Theravada Buddhist Corp.'s percentage of liability for the actual damages to 5% from 10%.[7] For the reasons we consider below, the record before us does not reflect that the trial court erred. Accordingly, we reverse the court of appeals' judgment.

## II

J.T.T. and M.T. contended in the court of appeals and maintain in this Court that the trial court committed errors of law that are apparent on the face of the record. They argued that since the trial court did not "upset" any of the jury's findings, the trial court was required to enter a judgment on the jury's verdict. We first consider the sisters' contentions regarding civil conspiracy.

### A

J.T.T. and M.T. asserted in the court of appeals that the jury found a conspiracy and therefore the trial court was required to give effect to those findings and impose joint and several liability on the defendants. Although J.T.T. and M.T. asserted that no examination of the facts presented to the jury was necessary to sustain this point of error on appeal, and none of those facts were part of the appellate record, the sisters nevertheless proceeded to discuss in their briefing before the court of appeals facts they said established a civil conspiracy.

■ Theravada Buddhist Corp. (the operator of the California temple) and Chon Tri assert that the jury was not requested to and did not find that they agreed to accomplish an unlawful purpose, in this case sexual assault. They assert that based on the trial court's charge, all the jury could have found was an agreement to be negligent.

■ This Court has addressed the elements of an actionable civil conspiracy in at least three decisions within the last ten years.[8] We have said those elements include:

(1) two or more persons;

(2) an object to be accomplished;

(3) a meeting of the minds on the object or course of action;

(4) one or more unlawful, overt acts; and

(5) damages as a proximate result.[9]

6. *Id.* at 687.

7. *Id.*

8. *Juhl v. Airington,* 936 S.W.2d 640, 644 (Tex. 1996); *Firestone Steel Prods. Co. v. Barajas, 927 S.W.2d 608, 614 (Tex.1996); Triplex Com-*munications, Inc. v. Riley, 900 S.W.2d 716, 719–20 (Tex.1995).

9. *See Juhl,* 936 S.W.2d at 644 (citing *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex. 1983)).

We have consistently held that there cannot be a civil conspiracy to be negligent.[10] The court of appeals acknowledged this rule of law [11] but concluded that it "does not entail that parties cannot conspire to cause injury by their negligence, for, in such a case, the gist of the conspiracy is not negligence, but the injury the conspirators specifically intend to cause." [12] This statement is, with all due respect, circular. If parties agreed and intended to cause a particular injury and followed through with that agreement, then the injury would be due to an intentional act, not negligence. Similarly, it appears that the court of appeals did not fully understand what we said in *Triplex* and repeated in *Juhl:* "merely proving a joint 'intent to engage in the conduct that resulted in the injury' is not sufficient to establish a cause of action for civil conspiracy." [13] If proving intent to engage in the conduct that resulted in injury were enough, intent to leave an excavation in a roadway uncovered, with no warning signs, would give rise to liability for a civil conspiracy even though the conduct amounted to negligence and perhaps gross negligence, depending on the circumstances, but did not amount to an intentional tort.

With these principles in mind, we turn to the jury's findings in this case. We reiterate that none of the facts presented to the jury are before us. We do not have any record of what transpired at trial. We do not know whether there is evidence to support each of the elements of conspiracy because none of the parties has argued either that there is some evidence to support the jury's findings or that there is no evidence to support the jury's findings. The only question before us is whether, based on the face of the charge to the jury and the answers to that charge, the trial court was required to render a judgment in favor of J.T.T. and M.T. based on a conspiracy theory.

In answering that question, Rule 279 of the Rules of Civil Procedure provides our road map. It says in pertinent part:

Rule 279. Omissions From the Charge.

Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived. When a ground of recovery or defense consists of more than one element, if one or more of such elements necessary to sustain such ground of recovery or defense, and necessarily referable thereto, are submitted to and found by the jury, and one or more of such elements are omitted from the charge, without request or objection, and there is factually sufficient evidence to support a finding thereon, the trial court, at the request of either party, may after notice and hearing and at any time before the judgment is rendered, make and file written findings on such omitted element or elements in support of the judgment. If no such written findings are made, such omitted element or elements shall be deemed found by

---

**10.** *Id.* at 644 ("Because negligence by definition is not an intentional wrong, one cannot agree or conspire to be negligent."); *Barajas,* 927 S.W.2d at 617 ("Because a conspiracy requires intent, parties cannot conspire to be negligent."); *Triplex,* 900 S.W.2d at 720 n. 2 ("This definition is also erroneous because it permitted the jury to find that the parties conspired to be negligent.").

**11.** 111 S.W.3d at 684 ("[W]e recognize that a conspiracy cannot be based on negligence." (citing *Triplex,* 900 S.W.2d at 719–20 n. 2)).

**12.** *Id.*

**13.** *Juhl,* 936 S.W.2d at 644 (quoting *Triplex,* 900 S.W.2d at 719).

the court in such manner as to support the judgment.[14]

■ Civil conspiracy is a ground of recovery that has more than one element. If one or more elements of that cause of action was omitted from the charge, and there was no request to include the omitted element or objection to its exclusion, and no written findings were made by the trial court on the omitted element, then the omitted element must be deemed found by the trial court in a manner that supports its judgment. In this case, the judgment did not include any liability based on conspiracy, and therefore, the trial court will be deemed to have found the omitted element in support of its judgment if the other requirements of Rule 279 are met. J.T.T. and M.T. do not contend that they objected to the way the conspiracy issue was submitted, and the limited record before us does not contain any objections to the charge.[15] Nor do the sisters suggest that there are written findings by the trial court on this issue. The only question, then, is whether an element of recovery based on conspiracy was omitted.

■ To determine whether there was an omission, we must examine the charge and the jury's findings. We begin with the negligence and damage questions, because, as all the parties agree, the jury's findings regarding conspiracy in this particular case cannot be viewed in isolation:

### QUESTION 1

Did the negligence, if any, of those named below proximately cause the occurrence in question regarding [J.T.T.]?

"NEGLIGENCE" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

With respect to the condition of the premises, THERAVADA BUDDHIST CORPORATION as owner or occupier of the premises was negligent if:

a. the condition posed an unreasonable risk of harm, and

b. THERAVADA BUDDHIST CORPORATION knew or reasonably should have known of the danger, and

c. THERAVADA BUDDHIST CORPORATION failed to exercise ordinary care to protect [J.T.T.] from the danger by both failing to adequately warn [J.T.T.] of the condition and failing to make that condition reasonably safe.

"ORDINARY CARE" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances. "ORDINARY CARE," when used with respect to the conduct of THERAVADA BUDDHIST CORPORATION as an owner or occupier of a premises, means that degree of care that would be used by an owner or occupier of ordinary prudence under the same or similar circumstances.

"PROXIMATE CAUSE" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proxi-

---

14. Tex.R. Civ. P. 279.

15. The defendants' joint motion to disregard the jury's finding with respect to conspiracy is a part of the appellate record, and that motion recites that the defendants objected to the

submission of the conspiracy issues. However, the defendants' objections are immaterial to our Rule 279 inquiry. The only pertinent question is whether J.T.T. and M.T. objected.

mate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

    a. CHON TRI            _yes_

    b. HO GIAC            _yes_

    c. THERAVADA BUDDHIST CORPORATION    _yes_

    d. PHAP LUAN BUDDHIST CULTURE CENTER    _no_

You are instructed that the negligence of DUNG HUU KHAT [sic] caused the occurrence in question.

Answer "Yes" or "No" for each of the following:

If you have answered "Yes" to QUESTION 1 for one or more of those named below, then answer the following question. Otherwise, do not answer QUESTION 2.

## QUESTION 2

What percentage of the negligence that caused the occurrence in question regarding [J.T.T.] do you find to be attributable to each of those found by you, in your answer to QUESTION 1, or instructed by the judge in QUESTION 1 to have been negligent?

The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The negligence attributable to any one named below is not necessarily measured by the number of acts or omissions found.

| | |
|---|---|
| a. DUNG HUU KHUAT | 85% |
| b. CHON TRI | 5% |
| c. HO GIAC | 5% |
| d. THERAVADA BUDDHIST CORPORATION | 5% |
| e. PHAP LUAN BUDDHIST CULTURE CENTER | 0% |
| Total | 100% |

## QUESTION 3

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [J.T.T.] for her injuries, if any, that resulted from the occurrence in question?

Consider the following elements of damages and none other. Consider each question separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find, if any. Do not include any amount for any condition not resulting from the occurrence in question. Do not include any amount for any condition existing before the occurrence in question, except to the extent, if any, that such other condition was aggravated by any injuries that resulted from the occurrence in question. Answer in dollars and cents, if any

a. Physical pain and mental anguish in the past $150,000

b. Physical pain and mental anguish that, in reasonable probability, will be sustained in the future $300,000

c. Reasonable expense of necessary medical care that, in reasonable probability, will be sustained in the future $38,000

The same series of questions was asked with regard to M.T., and the jury's answers were the same, except that the award of damages to M.T. was larger. The jury was then asked the following conspiracy-related question:

QUESTION 7

Were any of the parties named below part of a conspiracy that damaged [J.T.T.]?

a. DUNG HUU KHAT [sic]

_yes_

b. CHON TRI

_yes_

c. HO GIAC

_yes_

d. THERAVADA BUDDHIST CORPORATION

_yes_

e. PHAP LUAN BUDDHIST CULTURE CENTER

_no_

To be part of a conspiracy, the party named below for which you answer "Yes" and another person or persons must have had knowledge or [sic], agreed to and intended a common objective or course of action that resulted in the damages to [J.T.T.]. One or more persons involved in the conspiracy must have performed some act or acts to further the conspiracy.

Answer "Yes" or "No" for each of the following:

An identical question was put to the jury with regard to M.T., and the answers were the same.

This charge did not require the jury to find that there was a meeting of the minds to accomplish an unlawful purpose or to accomplish a lawful purpose by an unlawful means. The charge only required the jury to find that the defendants "agreed to and intended a common objective or course of action that resulted in the damages to" J.T.T. and M.T. Additionally, the charge permitted the jury to conclude that the "common objective or course of action" consisted of acts that were merely negligent.

J.T.T. and M.T. contend that the jury's findings regarding a conspiracy are necessarily referable to Khuat's sexual assaults and not the jury's negligence findings. They contend that it was undisputed that Khuat committed sexual assault. While it was undisputed that Khuat committed sexual assault, it was not undisputed that the other defendants conspired to commit those sexual assaults. The jury also found that some defendants were negligent and that the negligence caused "the occurrence in question." The charge permitted the jury to conclude that the "common objective or course of action" to which some of the defendants agreed was the same course of action on which the jury based its negligence findings.

In analyzing the sisters' point of error regarding their conspiracy theory, the court of appeals strayed from the limited record that was before it and was diverted from the only issue regarding conspiracy.

Instead of focusing on the charge and the jury's findings, the court of appeals attempted to find evidence of a conspiracy. It did so even though no evidence was before the court and no complaint about the factual or legal sufficiency of the evidence had been made by any party. For example, the court of appeals said:

> the jury can reasonably have inferred that the Theravada Buddhist Corporation, the Phap Luan Buddhist Culture Center, and abbot Chon Tri knew of Khuat's propensity and intent to assault girls and women in the course of performing religious rituals, had a duty to prevent Khuat's sexual assaults on the sisters, and knowingly participated in a conspiracy not to prevent such injuries, *i.e.*, not to protect the sisters from Khuat's assaults, knowing that they were substantially likely to occur. The conspiracy here was thus not a conspiracy to commit negligence; it was a conspiracy not to prevent—and hence to further—Khuat's criminal acts of sexual assault on the sisters, which the defendants had a duty to prevent and which they knew were substantially certain to result from their breaches of duty.[16]

None of the "facts" recited by the court of appeals is in the limited appellate record. Nor was there any issue regarding any duty that the defendants owed to J.T.T. and M.T. with respect to the conspiracy claim.

■ At one juncture the court of appeals referred to what J.T.T. and M.T. had *pleaded.*[17] Pleadings cannot support jury findings, and in any event, as we have seen, the sufficiency of the evidence to support the jury's findings was not before

the court. The *only* question was whether the jury made affirmative findings on each element necessary to establish a civil conspiracy.

**B**

■ As another basis for its conclusion that an actionable conspiracy had been found, the court of appeals reasoned that "by expressly granting the sisters' motion for rendition of judgment on the verdict, and by expressly denying the defendants motions' [sic] to disregard the jury's findings and to render judgment notwithstanding the verdict, the trial court bound itself to render a judgment affording the sisters all of the relief to which they were entitled by the jury's verdict."[18] We disagree. A trial court's judgment is the final indication of what relief it granted or denied with regard to specific causes of action. The fact that a trial court may deny a motion for judgment notwithstanding the verdict does not mean that it is thereafter foreclosed from rendering a judgment that in fact disregards the verdict. A trial court may ultimately render the judgment it determines is required by the law and the facts as found by the factfinder as long as it retains its plenary power, notwithstanding its prior rulings.

But in any event, a sua sponte or sub silentio reversal of a prior ruling on a motion for judgment notwithstanding the verdict or motion to disregard the verdict was not what transpired in the trial court in this case. The trial court declined to set aside or disregard what the jury *did* find, as far as those findings went. But the trial court did not give any legal effect to the conspiracy-related findings because it

16. 111 S.W.3d at 685.

17. *Id.* at 684.

18. *Id.* at 686 (citing *Townsend v. Catalina Ambulance Co.,* 857 S.W.2d 791, 798 (Tex.App.Corpus Christi 1993, no writ), and *Mowery v. Fantastic Homes, Inc.,* 568 S.W.2d 171, 173 (Tex.Civ.App.Dallas 1978, no writ)).

was not required to. The findings omitted an element necessary for imposition of liability based on conspiracy.

The court of appeals erred in holding that the trial court was required to render judgment based on a cause of action for conspiracy. The court of appeals therefore erred in directing the trial court to impose joint and several liability based on a conspiracy theory.

## III

The other issue before us is whether, in light of the charge and the jury's findings, the trial court erred in failing to render judgment against Chon Tri in his individual capacity. The jury found that Chon Tri was negligent and apportioned his responsibility as 5%. The jury also found that the corporation of which he was an officer, Theravada Buddhist Corp., was negligent and that its responsibility was 5%. The trial court ruled that as a matter of law, Chon Tri was acting in the course and scope of his employment with that corporation. The trial court's judgment imposed vicarious liability on the corporation for Chon Tri's negligence, rendering judgment against it for 10% of the damages, but a take-nothing judgment was rendered in favor of Chon Tri.

J.T.T. and M.T. contend that the trial court was required to render judgment against Chon Tri individually. Chon Tri and Theravada Buddhist Corp. contend that (1) the trial court heard the evidence; (2) we should presume that it properly concluded that Chon Tri individually owed no duty to the sisters; and (3) the trial court therefore properly rendered a take-nothing judgment against Chon Tri.

The defendants are correct that a negligence finding against an individual does not automatically result in individual liability when the individual was acting as the agent or employee of a corporation. Corporations can, of course, only act through individuals. We explained in *Leitch v. Hornsby* when individual liability will be imposed and when it will not.[19] "[I]ndividual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty."[20] We gave as an example an agent whose negligence caused an automobile collision while the agent was driving in the course and scope of employment.[21] An agent, in his individual capacity, owes a duty to the public to drive with reasonable care. Therefore, the individual is liable for his or her own negligence, and the employer is also vicariously liable.[22] The situation in *Leitch*, however, was different. The corporate agents were not individually liable even though the jury had found them and their employer negligent. In that case, the plaintiff Hornsby was injured when he lifted a sixty-pound reel of cable. There was evidence that his employer, through its officers and employees, had declined to provide Hornsby a lifting belt or dolly. We held that the actions or inactions of the individuals were actions or inactions "within their capacities as officers" of Hornsby's corporate employer and that the individuals "had no individual duty as corporate officers to provide Hornsby with a safe workplace."[23] The individuals were not liable for their negligence because they

---

19. 935 S.W.2d 114, 117 (Tex.1996).

20. *Id.*

21. *Id.*

22. *Id.*

23. *Id.* at 118.

"did not breach any separate duty" to Hornsby.[24] Only their corporate employer was liable for their negligence.

The existence of a legal duty is a question of law for the court to decide,[25] and that determination is made "from the facts surrounding the occurrence in question." [26] In the present case, however, we have no facts before us. As already discussed, there is no record before us of what transpired at trial. We cannot determine whether Chon Tri breached a duty that he owed to J.T.T. and M.T. separate from the duty his employer, the Theravada Buddhist Corp., owed to them. It was incumbent on J.T.T. and M.T., as the appellants in the court of appeals, to bring forward a record demonstrating that the trial court erred in failing to impose individual liability on Chon Tri. We must presume that the trial court decided that Chon Tri did not owe a duty to the sisters separate and apart from that of his employer and that the facts support that determination because that presumption is in favor of the judgment the trial court rendered.

The court of appeals concluded that, in rendering a take-nothing judgment in favor of Chon Tri, the trial court effectively rendered a judgment notwithstanding the verdict.[27] We disagree. The jury's findings were not disturbed, set aside, or disregarded. Chon Tri was found negligent, and the trial court gave effect to that finding by holding Chon Tri's employer liable for his negligence. The *legal effect* of the jury's negligence finding against Chon Tri remained a matter to be determined by the court, not the factfinder.

J.T.T. and M.T. argue that Chon Tri and the Theravada Buddhist Corp. were required to assert a "no evidence" cross-point in the court of appeals. Again, we disagree. These defendants do not contend that the jury's findings had no support in the evidence. They contend only that, accepting the jury's findings at face value, the trial court did not err in rendering the judgment it did.

Because the record does not reflect that the trial court erred in failing to hold Chon Tri individually liable, the court of appeals erred in reversing the trial court's judgment in that regard.

\* \* \* \* \* \*

We hold that the limited record before us does not establish that the trial court erred. Accordingly, we reverse the court of appeals' judgment, and the trial court's judgment will therefore stand.

24. *Id.*

25. *Humble Sand & Gravel, Inc. v. Gomez,* 146 S.W.3d 170 (Tex.2004); *Tex. Home Mgmt., Inc. v. Peavy,* 89 S.W.3d 30, 33 (Tex.2002) ("Whether a duty exists is a question of law for the court."); *SmithKline Beecham Corp. v. Doe,* 903 S.W.2d 347, 351 (Tex.1995) ("The existence of a legal duty is, of course, a question of law."); *Centeq Realty, Inc., v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995) ("The threshold inquiry in a negligence case is whether the defendant owes a legal duty to the plaintiff.... The existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question.");

*Bird v. W.C.W.,* 868 S.W.2d 767, 769 (Tex. 1994) ("Whether a legal duty exists under a set of facts is a question of law."); *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990) ("The threshold inquiry in a negligence case is duty.... [T]he existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question."); *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983).

26. *Bird,* 868 S.W.2d at 769.

27. 111 S.W.3d at 686–87.

Justice BRISTER and Justice JOHNSON did not participate in the decision.